UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE TRUNDLE & CO PENSION PLAN, CARIN
TRUNDLE, as Trustee, suing Derivatively, and on
behalf of the TRUNDLE & CO PENSION PLAN,
and CARIN TRUNDLE Individually,

       Plaintiffs,

-against-

BARRY EMANUEL,

       Defendant.

**OPINION AND ORDER**
18 Civ. 07290 (ER)

---

Ramos, D.J.:

  Carin Trundle ("Trundle") brings this suit individually and derivatively on behalf of Trundle & Co. Pension Plan (the "Plan") against Barry Emanuel ("Emanuel") for declaratory judgment, breach of fiduciary duty, conversion, accounting, breach of the covenant of good faith and fair dealing, breach of contract, and unjust enrichment.

  Before the Court is Emanuel's motion to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) and Trundle's motion to amend the complaint under Federal Rule of Civil Procedure 15(a)(2). Docs. 11, 16. For the reasons set forth below, the Court GRANTS Emanuel's motion to dismiss, and DENIES Trundle's motion to amend the complaint. All dismissals are without prejudice.

## I.  BACKGROUND

### A. Trundle's Complaint

  Trundle and Emanuel worked together for over thirty years at Trundle & Company, Inc., at which Trundle was an officer. Complaint ¶¶ 6-7. The Plan was Trundle & Company, Inc.'s

pension plan. *Id.* ¶¶ 8-9. The Plan had three officers: Trundle was administrator and trustee, Emanuel was a trustee, and Edward Trundle was an officer and administrator. *Id.* ¶¶ 8, 10-11. Trundle began trying to close the Plan in 2016. *Id.* ¶ 2019. As she began preparing to make final distributions from the Plan, Trundle became aware of two transactions that are the subject of this lawsuit.

First, in February 2003, Emanuel transferred $150,000 from the Plan to East Hampton Indoor Tennis Club, LLC, where Emanuel and/or his family have an ownership interest (the "2003 transaction"). *Id.* ¶¶ 29-31. This unilateral transaction had not been recorded with the Plan, so there was no way for Trundle to know about it. *Id.* ¶¶ 32, 35. When Trundle first discovered this transaction in 2016, Emanuel's attorneys suggested to her that it was most likely a loan. *Id.* ¶ 33. If the money was a loan or investment, then it was improper under Plan guidelines because Emanuel had an ownership interest in east Hampton Indoor Tennis club. *Id.* ¶ 36. E-mails with Improved Funding, the Plan provider, confirm that this kind of loan would be improper. *Id.* ¶ 37. This transaction also violated several duties Emanuel owed to the Plan. *Id.* ¶¶ 40-44. Trundle has requested that Emanuel give a definitive answer as to whether the transfer was a loan, gift, investment, or distribution, but he has refused to comply. *Id.* ¶ 39. To date, the $150,000 has been neither repaid nor taken by Emanuel as a personal distribution. *Id.* ¶ 45.

Second, in December 2007, Emanuel wired $100,000 from the Plan to a company called Copen United ("Copen") in order to purchase equity in the company (the "2007 transaction"). *Id.* ¶¶ 14-15. On two occasions, Trundle advised her personal and business accountants and the accountants for Copen that the $100,000 should be recorded as a personal distribution.[1] *Id.* ¶¶ 16-17. After taking these measures, she believed that the personal distribution had been properly

---

[1] The complaint is silent as to when these requests were made.

recorded. *Id.* ¶ 18. Trundle first learned that this was not the case in 2016, when she required Emanuel's signature for certain documents in order to close the Plan. *Id.* ¶ 20. At that time, Emanuel refused to sign the documents unless he received $100,000. *Id.* ¶ 21. Trundle then learned that the transfer to Copen for $100,000 had not been recorded as a personal distribution. *Id.* ¶ 22. Trundle paid the allegedly "extorted" amount in order to close the Plan, even though Emanuel was not entitled to that amount. *Id.* ¶¶ 27-28.

### B. Procedural History

Trundle sued Emanuel derivatively on behalf of herself and the Plan in New York State Court on June 13, 2018 demanding $350,000, among other forms of relief. Emanuel removed the case to this Court on August 13, 2018 on the grounds that all of Trundle's claims were completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Doc. 1. Removal was unopposed.

On October 5, 2018, Emanuel brought the instant motion to dismiss with prejudice all of Trundle's claims under Federal Rule of Civil Procedure 12(b)(6). Doc. 11. On December 20, 2018, Trundle filed a cross-motion for leave to amend the complaint under Federal Rule of Civil Procedure 15(a)(2). Doc. 16.

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he

purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted).

Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When ruling on a Rule 12(b)(6) motion, the court is generally confined to the four corners of the complaint and the allegations contained therein. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007). Any written instrument attached to a complaint or document incorporated in it by reference may be deemed part of the complaint itself. *Cortec Indus., Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 47 (2d Cir.1991). In addition, a court may consider materials submitted by a defendant with a Rule 12(b)(6) motion where the plaintiff has "actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." *Id.* at 48. If matters outside the pleadings are presented with a Rule 12(b)(6) motion, the Court has the option to either "exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under [Rule] 56 and afford all parties the opportunity to present supporting material." *Willing v. Suffolk Cty. Dep't of Soc. Servs.*, No. 09-CV-5285 (ADS)(ETB), 2010 WL 2736941, at *2 (E.D.N.Y. July 8, 2010) (internal quotation marks omitted) (quoting *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir.2000)).

   **B. Federal Rule of Civil Procedure 15**

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the court's leave. Under section 15(a)(2), a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). This is a permissive standard since there is a "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

The Second Circuit has held that leave to amend may be denied based on futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (citation and internal quotation marks omitted). In determining whether an amendment is futile, the court evaluates the amended complaint "through the prism of a Rule 12(b)(6) analysis." *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006); *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Following this standard, the court accepts the Plaintiff's factual allegations as true and draws reasonable inferences in favor of the Plaintiff. *Id.* at 87-88. Beyond these considerations, the court does not need to consider the substantive merits of the plaintiff's claim on a motion to amend. *See Ricciuti,* 941 F.2d at 123-124 (noting that the plaintiff is not required to prove his case at this stage). The party opposing the motion to amend bears the burden of proving the claim's futility. *See, e.g.*, *Allison v. Clos-ette Too, L.L.C.*, 14 Civ. 1618 (LAK)(JCF), 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015).

### III. DISCUSSION

Emanuel first argues that the claims should be dismissed because they are all expressly preempted by ERISA. Moreover, he argues the claims should be dismissed with prejudice and that any motion to amend should be denied. The Court considers each of these arguments.

### A. ERISA PREEMPTION

ERISA provides for two types of preemption: complete preemption under Section 502; and express preemption under Section 514. *See* 29 U.S.C. §§ 1132, 1144(a). Complete

6

preemption under Section 502 is jurisdictional, essentially allowing for removal of state law claims into federal court by "convert[ing] the plaintiff's state law claim to one to enforce the ERISA plan under federal law." *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 6 (D. Conn. 2019). "This civil enforcement scheme 'completely preempts any state-law cause of action that duplicates, supplements, or supplants an ERISA remedy.'" *McCulloch Orthopedic Surgical Servs., PLLC v. Aetna, Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) (internal citations and quotations omitted) (quoting *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011)).

"Express preemption," on the other hand "is one of the 'three familiar forms' of ordinary defensive preemption (along with conflict and field preemption).'" *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (citing *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005)). Under Section 514, ERISA expressly preempts state law claims that "relate to" employee benefit plans. *See* 29 U.S.C. § 1144(a). "ERISA preemption is not limited to state laws that specifically affect employee benefit plans; it extends to state common-law contract and tort actions that relate to benefits as well." *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 571 (S.D.N.Y. 2016). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)).

The Second Circuit has established different standards for evaluating express ERISA preemption with regards to state statutory versus state common law claims. "As to state statutory claims, ERISA preempts those that 'provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them,

7

or interfere with the calculation of benefits owed to an employee.'" *Id.* (quoting *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989)). With regards to state common law claims, the Second Circuit looks to the Supreme Court's decision in *Aetna Health Inc. v. Davila*, a Section 502 case: "ERISA preempts those [claims] that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" *Paneccasio*, 532 F.3d at 114 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)).[2] In *Davila*, the Court found that claims were preempted if "at some point in time, [the individual] could have brought his claim under § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions." 542 U.S. at 210; *see also Montefiore Med. Ctr.*, 642 F.3d at 328.

"The civil enforcement scheme of § 502(a) is one of the essential tools for accomplishing the stated purposes of ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987). Under these provisions, "a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits." *Id.* at 53. Forms of relief include "accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits." Additionally, "[a] participant or beneficiary may also bring a cause of action for breach of

---

[2] As the Court noted in *Chau v. Hartford Life Ins. Co.*,

> The Court observes that the standard cited as the preemption standard for preemption of state law common law claims, as opposed to statutory claims, arises from the Supreme Court's decision in *Davila*, and related to the "complete preemption" doctrine under Section 502(a). *Davila*, 542 U.S. at 214. The state law claims at issue in *Davila* were asserted violations of duties arising under a state statute—the Texas Health Care Liability Act. *Id.* at 204. The Court also observes that the laws reviewed in *Borges* that led to the conclusion cited included "common law tort and contract actions asserting improper processing of a claim for benefits under an ERISA-covered benefit program . . . ." *Borges*, 869 F.2d at 146.

The Court finds, as did the Court in *Chau*, that the result in this case would be the same under either analysis.

8

fiduciary duty." *Id.* Given the comprehensive nature of the scheme, Courts are reluctant to imply ERISA causes of action that are not provided for by statute. *Id.* at 53-54.

Emanuel argues that all of Trundle's claims are preempted because they could have been brought under ERISA.[3] Doc. 13 at 4-9. Trundle does not dispute that the Plan is governed by ERISA or that she is the type of individual who can bring a claim under ERISA. The main thrust of her argument, as the Court understands it, is that her claims against Emanuel implicate a separate duty arising not out of his role as the Plan's trustee, but rather out of the relationship he and Trundle shared as long-time business partners. *See, e.g.*, Doc. 16 at 7 ("Trundle is not suing under the Plan for denying her a payment or entitlement to an unpaid benefit. Rather, and having nothing to do with the regulatory requirements of ERISA, she is suing Emanuel *personally* for converting monies which did not belong to him, causing there to be no money left in the Plan for Trundle." (emphasis added)). The Court does not find that the Complaint, even when read in the light most favorable to Trundle, can support her argument. After considering each of Trundle's claims, the Court finds that they are expressly preempted by ERISA.

Trundle's Complaint begins with two nearly identical causes of action for declaratory judgment and damages, one for the 2003 transaction and one for the 2007 transaction. Emanuel argues that each could have been brought under ERISA § 502(a)(1)(B). Trundle's only reply is that she is not seeking relief under ERISA but rather "seeks declaratory relief as to whether each of the two transfers was accounted for correctly by Emanuel *personally* and whether he owes money." Doc. 16 at 7 (emphasis added). The Complaint tells a different story. As to the 2007 transaction, it states that the cause of action is premised on the existence of "[a] bona fide

---

[3] Although Emanuel's motion to dismiss cites initially to Section 502, the Court will assume that Emanuel is pursuing a theory of express preemption under Section 514, since the claims are already in federal court and there is presently no motion to remand at issue.

9

justiciable and substantial controversy . . . with respect to Emanuel's obligations *as trustee* of the . . . Plan and the designation of his personal distributions." Complaint ¶ 49 (emphasis added). As to the 2003 transaction, the Complaint alleges that "if the transfer was a loan or investment [*sic*], it was prohibited *under the rules of the . . . Plan* and was made by Emanuel in violation of *his obligations under the Plan*." *Id.* ¶ 69 (emphasis added). These causes of action are clearly rooted in Emanuel's obligations to Trundle under the Plan, not in any obligation Emanuel may or may not owe Trundle personally.

Through these actions, Trundle is seeking to "clarify[] or settl[e]" whether Emanuel owes money to the Plan (and therefore to her). *Id.* ¶¶ 53, 75. She also asserts damages. *Id.* ¶¶ 54, 76. As such, she is seeking to "clarify [her] rights to future benefits under the terms of the [P]lan," and she could have brought these actions under § 502(a)(1)(B). 29 U.S.C. § 1332(a)(1)(B). To the extent she is seeking "to recover benefits due to [her] under the terms of [the] [P]lan," she could also have brought this claim under § 502(a)(1)(B). *Id.*; *see also Pilot Life*, 481 U.S. at 53 (finding that "[r]elief [under the civil enforcement provisions of § 502(a)] may take the form of accrued benefits due [or] a declaratory judgment on entitlement to benefits"). Therefore, these two causes of action are preempted by ERISA. *See, e.g.*, *Thresher v. Gulf States Paper Corp.*, 244 F. Supp. 2d 175, 179 (W.D.N.Y. 2003) (finding declaratory judgment action regarding the proper calculation of benefits was preempted by ERISA).

Next, Trundle brings two nearly identical causes of action asserting breach of fiduciary duty and seeking $100,000 and $150,000 in damages for the 2007 transaction and the 2003 transaction, respectively. Trundle argues that "the breach of duty complained of is not as trustee under the Plan, but rather as business relation of Plaintiff, and is not preempted by ERISA." Doc. 16 at 8. This is belied by the face of the Complaint, which reads that "*as a Trustee of . . .*

10

*[the] Plan*, Emanuel has a fiduciary relationship with Trundle as administrator and trustee of the . . . Plan." Complaint ¶ 78 (emphasis added); *see also id.* ¶ 79 ("[A]s a Trustee of the . . . Plan, Emanuel has a duty of care owed to both Trundle and the Trundle & Co. Pension Plan.); *id.* ¶ 90 ("[I]n causing the amount of $150,000.00 to be transferred for the benefit of the East Hampton Indoor Tennis Club, LLC in the form of a loan, Emanuel has violated the terms of the [Plan] and has thus breached his fiduciary duty to Plaintiffs."). The fiduciary duty owed by Emanuel to Trundle was unequivocally that of trustee and unequivocally arose as a result of his role with the Plan. The Complaint also makes it clear that the damages Trundle seeks are for benefits due to her under the Plan. *See id.* ¶ 87 ("[U]ntil [Emanuel returns or otherwise designates the $100,000], Trundle cannot take any potential final distributions to which she is entitled."). Therefore, these claims are also preempted by ERISA. *See, e.g.*, *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 424, 432 (S.D.N.Y. 2006) (finding that breach of fiduciary duty claims are preempted where they "seek to recover benefits and to enforce rights under an ERISA-governed plan [because] ERISA provides a civil enforcement remedy for the conduct upon which [Plaintiff] bases her breach of contract and breach of fiduciary duty claims.").

The fifth cause of action is for conversion. It asserts that Emanuel "exercised wrongful dominion and control over the $150,000.00 in funds belonging to the . . . Plan." Complaint ¶¶ 96-97. Trundle argues that this claim does not "trigger[] the focus of the pre-emption clause," which is "to avoid a multiplicity of regulation." Doc. 16 at 8 (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995)). However, in nearly the same breath she goes on to state that if she is given the result that she seeks, then "monies would be due back to the Plan." *Id.* Even Trundle's argument, then, is premised on the idea that the conversion claim is one to "recover losses to the Fund[]." *LoPresti*

11

*v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997). Therefore, it certainly "triggers" the focus of ERISA preemption. If such a claim is decided under state rather than federal common law, it may create a "threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Travelers*, 514 U.S. at 657 (internal quotations and citations omitted). This is because it is "nothing more than an 'alternative theory of recovery for conduct actionable under ERISA.'" *LoPresti*, 126 F.3d at 41. (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F. 2d 270, 288 (2d Cir. 1992)). The Court therefore finds that this cause of action is preempted by ERISA.

The sixth cause of action is for common-law accounting. "The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Palazzo v. Palazzo*, 121 A.D.2d 261, 265 (2nd Dep't 1986); *see also* Doc. 16 at 9. Emanuel alleges that this is essentially a claim for breach of fiduciary duty and could therefore have been brought under ERISA § 502(a)(1)(B). Doc. 13 at 8. Trundle does not dispute this characterization but counters that "[t]his [claim] is not related to the regulation sought to be controlled by preemption, but rather to the obligation that each party in a position of trust owes to the other." Doc. 16, at 9. The problem with this argument is that, according to the Complaint, the fiduciary duty Trundle alleges is firmly and singularly rooted in the Plan, not in any kind of independent legal duty. In fact, this entire cause of action is premised on the fact that "[Trundle] had a confidential and fiduciary relationship with Defendant who was the trustee of the . . . Plan." Complaint ¶ 102. Therefore, the Court also finds that this cause of action is preempted by ERISA. *See, e.g.*, *Harrison*, 17 F. Supp. at 424 (finding breach of fiduciary duty claims preempted by ERISA).

The seventh, eighth, and ninth causes of action are also preempted by ERISA. These causes of action are, respectively, for breach of the covenant of good faith and fair dealing, breach of contract, and unjust enrichment. Trundle argues that these claims are not preempted by ERISA because they are "the result of Emanuel's alleged failures and wrongdoings to Trundle personally." Doc. 16 at 9. However, this reading of the complaint is implausible. The cause of action for breach of the covenant of good faith and fair dealing states that "an agreement existed between the Parties by virtue of the . . . Plan and by virtue of the Defendant's role as trustee to act in good faith." Complaint ¶ 113. This cause of action, then, is completely premised on Emanuel's role as trustee, and not on any duties he had to Trundle personally. The cause of action for breach of contract is similarly premised on the fact "[t]hat an agreement existed between the Parties by virtue of the . . . Plan," and not on any duty Emanuel may have had outside of the Plan. *Id.* ¶¶ 124-26. And the cause of action for unjust enrichment also refers to Emanuel's duties under the Plan and whether he "was paid additional funds to which he was not entitled" under the Plan. Complaint ¶ 135 (referencing Complaint, Ex. A, E-mails from Improved Funding, which refer to Emanuel's duties under the Plan).

As a result of these alleged wrongdoings, Trundle argues, she "was left unable to collect her rightful share of the money owed to her in distributions"—another way of saying that she did not receive the benefits owed to her under the Plan. Doc. 16 at 9. "[Emanuel's] potential liability under [state law] in [this] case[], then, derives entirely from the particular rights and obligations established by the . . . [P]lan[]." *Davila*, 542 U.S. at 213. These causes of action squarely fit within Section 502(a)'s enforcement scheme and are therefore expressly preempted by ERISA. *See also Gianetti v. Blue Cross & Blue Shield of Conn., Inc.*, No. 3:07cv01561

13

(PCD), 2008 WL 1994895, at *3-5 (D. Conn. May 6, 2008) (finding that ERISA preempted causes of action for breach of contract, quantum meruit, and unjust enrichment).

For the foregoing reasons, all of Trundle's claims are expressly preempted by ERISA, and the Court therefore dismisses Trundle's complaint under Rule 12(b)(6).

### B. Dismissing Claims Without Prejudice

Emanuel argues that all claims should be dismissed with prejudice for two reasons: (1) a valid release existed between the two parties that covered all possible potential claims; and (2) any potential ERISA claims would be barred by the statute of limitations. The Court does not agree.

#### 1. Existence of a Valid Release Between the Parties

Emanuel argues that Trundle's claims should be dismissed with prejudice because any current and potential claims are barred by a valid release executed by the parties. Trundle does not deny that such a release exists, but rather argues that it does not cover the claims at issue.

The Court declines to consider the release for a different reason. A motion to amend is evaluated through "the prism of a Rule 12(b)(6) analysis." *Henneberry*, 415 F. Supp. 2d at 433 (S.D.N.Y. 2006). On a 12(b)(6) motion to dismiss, the Court is generally restricted to the pleadings and any documents incorporated by these. *Roth v. Jennings,* 489 F.3d at 509. However, the release was neither mentioned nor incorporated by reference into the current Complaint. Nor does Emanuel argue that Trundle had "actual notice of all the information in the movant's papers and . . . relied upon these documents in framing the complaint." *Cortec Indus., Inc.*, 949 F.2d at 47 (2d Cir. 1991). Therefore, the Court cannot consider the release as a reason

for dismissing Trundle's claims with prejudice or for denying her motion to amend the complaint.[4]

### 2. Statute of Limitations

Next, Emanuel argues that the claims should be dismissed with prejudice because the statute of limitations for all claims arising from the 2003 and 2007 transactions have expired. Trundle, in turn, argues that the statute should be tolled because fraudulent concealment tolls the statute of limitations. Doc. 16 at 14. To plead fraud in New York, plaintiffs must meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b). Emanuel argues that Trundle has failed to meet this standard because she has "failed to explain with particularity [her] theory of fraud in the Complaint, in [her] opposition to Defendant's motion, or in a proposed amended pleading." Doc. 19 at 8.

Although the Court agrees that Trundle has failed to properly plead fraud in the current Complaint, it does not find that it would be implausible for Trundle to properly allege fraud in an amended complaint. In New York, there is a "strong preference for resolving disputes on the merits." *See Williams*, 659 F.3d at 212-13 (internal quotation marks omitted) (quoting *Green,* 420 F.3d at 104 (2d Cir. 2005)). Therefore, the Court declines to find that any amendment would necessarily be futile and dismisses all claims without prejudice.

### C. Motion to Amend

---

[4] Emanuel cites three cases for the proposition that a valid release may warrant a motion to dismiss under Rule 12(b)(6): *Ladenburg Thalmann & Co., Inc. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 204 (S.D.N.Y. 2001), *2 Broadway LLC v. Credit Suisse First Boston Mortg. Capital, LLC*, No. 00 Civ. 5773 GEL, 2001 WL 410074, at *7, and *Borden v. City of New York*, No. 16 Civ. 716 (GHW), 2017 WL 744593, at *5 (S.D.N.Y. Feb. 24, 2017). However, in these cases, the complaint, its attachments, or its referenced documents incorporated the releases. Such is not the case here.

On cross-motion, Trundle asks that she be allowed to amend her complaint to include ERISA causes of action. Emanuel argues that, in addition to being futile for the reasons the Court has already rejected, the motion to amend the Complaint should, at the very least, be denied because Trundle failed to follow the requirements of Federal Rule of Civil Procedure 7(b)(1)(B), which requires a movant to "state with particularity the grounds for seeking the order." The Court agrees and dismisses the motion to amend the Complaint without prejudice.

"It is well-settled that when seeking leave to amend, the movant must submit 'a complete copy of the proposed amended complaint . . . so that both the Court and the opposing party can understand the exact changes sought.'" *Akran v. United States*, 997 F. Supp. 2d 197, 207 (E.D.N.Y.) (quoting *La Barbera v. Ferran Enterprises, Inc.*, No. 06 Civ. 2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009)), *aff'd* 581 Fed. Appx. 46 (2d Cir. 2014). Because Trundle has not met this requirement, the Court denies the current motion to amend without prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Emanuel's motion to dismiss all claims and DENIES Trundle's motion to amend her complaint. All dismissals are without prejudice. If Trundle wishes to file another motion to amend the complaint, she must do so by October 31, 2019. Failure to do so will result in the Court closing this case. The Clerk of Court is respectfully requested to termination the motions, Docs. 11, 16.

SO ORDERED.

Dated: September 26, 2019
        New York, New York

Edgardo Ramos, U.S.D.J