UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE TRUNDLE & CO PENSION PLAN, CARIN TRUNDLE, as Trustee, suing Derivatively, and on behalf of the TRUNDLE & CO PENSION PLAN, and CARIN TRUNDLE Individually,

                        Plaintiffs,

- against –

BARRY EMANUEL,

                        Defendant.

**OPINION AND ORDER**

18 Civ. 07290 (ER)

---

Ramos, D.J.:

        Carin Trundle ("Trundle") brought suit individually and derivatively on behalf of Trundle & Co. Pension Plan (the "Plan") against Barry Emanuel ("Emanuel") for, *inter alia*, declaratory judgment, breach of fiduciary duty, and breach of contract. Doc. 1-1. In a previously issued Opinion, the Court dismissed those claims as expressly preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"). Doc. 20. Now before the Court is Trundle's motion for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). Doc. 21. In her proposed First Verified Amended Complaint (the "PAC"), Doc. 21-3, Trundle raises two new claims against Emanuel: economic duress and fraud. For the reasons stated below, Trundle's motion is DENIED with prejudice.

I. BACKGROUND

A. Factual Background[1]

Trundle and Emanuel were longtime business partners, with a professional relationship spanning over thirty years. Doc. 21-3, ¶ 6. Trundle was an officer at Trundle & Company Inc. (the "Company") and, when the Company established a pension plan, Trundle was an administrator, and both Trundle and Emanuel were trustees, of the Plan. *Id.* ¶¶ 7-9.

In 2016, Trundle had to close the Plan because of financial penalties and restrictions from the Internal Revenue Service. *Id.* ¶ 10. While preparing to settle final distributions from the Plan, Trundle discovered that on February 28, 2003 Emanuel had transferred $150,000 from the Plan to an Interest on Lawyers Account ("IOLA") held by the law firm Friedman, Krauss & Zlotolow (the "Firm"). *Id.* ¶¶ 22-23. During the wind down of the Plan, Trundle learned that the Firm had subsequently transferred the same amount to the East Hampton Indoor Tennis Club, LLC (the "Club"), where Emanuel and/or his family are believed to have an ownership interest.[2] *Id.* ¶¶ 24-26. She was told by Emanuel's lawyers that the transfer was likely made as a loan to the Club. *Id.* ¶ 27. According to Trundle, Emanuel took unspecified steps to hide the 2003 transaction from her. *See, e.g., id.* ¶¶ 30, 39 (referencing unspecified "active efforts to conceal").

Further, in order to close the Plan, Trundle required Emanuel's signature as trustee on various documents, such as the transfer of Trundle's own life insurance policy. *Id.* ¶¶ 11-12. However, Emanuel refused to sign the documents necessary to transfer Trundle's life insurance and close the Plan unless he received an additional payment of $100,000. *Id.* ¶¶ 14-17. Because

---

[1] The following facts are taken from the PAC, Doc. 21-3, which the Court accepts as true for purposes of Trundle's motion for leave to amend. *See Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 366 n.1 (S.D.N.Y. 2014).

[2] The PAC does not indicate when the Firm transferred this sum to the Club or when Trundle learned of the transfer by the Firm to the Club. Doc. 21-3, ¶¶ 23-24 ("As Trundle later learned . . . those funds were then transferred to the [Club] by the [Firm].").

without Emanuel's signature the Plan's assets could not be distributed and Trundle faced financial penalties exceeding $1,000,000, Trundle acceded to Emanuel's demand in exchange for his cooperation and transferred the $100,000 sum from the Plan to Emanuel. *Id.* ¶¶ 11, 13-14, 18.[3]

Trundle alleges damages of $250,000, plus applicable interest, $100,000 of which arises from Emanuel's allegedly extortionate 2016 demand and $150,000 of which arises from Emanuel's allegedly improper transfer of funds from the Plan to the Firm and then to the Club. *Id.* ¶¶ 19, 39, 45, 57.[4]

### B. Procedural Background

Trundle filed a complaint individually and derivatively on behalf of the Plan against Emanuel in New York State Court on June 13, 2018. On August 13, 2018, Emanuel removed the case to this Court on the grounds that all of Trundle's claims were completely preempted by ERISA. Doc. 1. Trundle did not oppose removal. Doc. 20 at 3. Trundle raised nine claims, including for declaratory judgment, breach of fiduciary duty, conversion, accounting, breach of the covenant of good faith and fair dealing, breach of contract, and unjust enrichment. Doc. 1-1, ¶¶ 43-140; Doc. 20 at 1.

On October 5, 2018, Emanuel moved to dismiss all of Trundle's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 11. On December 20, 2018, Trundle opposed

---

[3] The PAC repeatedly refers to the 2016 demand as involving an "additional" amount. *See, e.g.*, Doc. 21-3, ¶¶ 14, 15, 18, 37. The Court understands this as signifying that Emanuel demanded a $100,000 transfer in exchange for his signature and in addition to whatever distribution he was otherwise due under the Plan at the time of its closure.

[4] The PAC briefly mentions a third transaction that Emanuel is alleged to have caused between the Plan and "Copen." Doc. 21-3, ¶¶ 20-21. The PAC does not indicate when this transfer occurred, *see id.*, and Trundle does not allege damages in connection with the Copen transaction, *see id.* ¶ 57. Though the Copen transfer is referred to as "the aforesaid transfer of $100,000.00" following discussion of the 2016 transfer in the PAC, *id.* ¶ 20, the Court observes that the Copen transaction appears synonymous with the 2007 transaction discussed at length in the original pleading. Doc. 1-1, ¶¶ 14-18.

dismissal and filed a cross-motion for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  Doc. 16.  This Court granted Emanuel's dismissal motion, finding Trundle's claims were expressly preempted by ERISA and denied Trundle leave to amend without prejudice.  Doc. 20 at 14-16.  On October 31, 2019, Trundle timely filed the instant motion again seeking leave to amend the complaint to include two new claims against Emanuel.  Doc. 21.  Her first proposed cause of action, for economic duress, relates to Emanuel's alleged demand for additional payment in exchange for his signature on various documents involved in closing the Plan in 2016.  Doc. 21-3, ¶¶ 40-45.  Her second proposed cause of action, for fraud, relates to Emanuel's alleged efforts to conceal his 2003 transfer of funds from the Plan to the Firm and eventually to the Club.  *Id.* ¶¶ 46-57.  On November 27, 2019, Emanuel opposed, Doc. 24, and Trundle did not file a further response.

## II.     LEGAL STANDARD

"A party is entitled to amend its pleading once, as a matter of course, within 21 days after serving the pleading or, if a responsive pleading is required, within 21 days after service of the same or a motion under Rule 12(b), (e), or (f)."  Fed. R. Civ. P. 15(a)(1).  A party may not otherwise amend its pleading absent "the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15 instructs the Court to "freely give leave [to amend] when justice so requires," *id.*, and "this mandate is to be heeded," *Foman v. Davis*, 371 U.S. 178, 182 (1962).

A district court has discretion to deny leave for "'good reason, including futility[.]'" *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)); *see also Foman*, 371 U.S. at 182; *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).  A proposed amendment to a pleading is futile if

an amended claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). Therefore, the court assesses a proposed amendment "through the prism of a Rule 12(b)(6) analysis." *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006).

When applying the Rule 12(b)(6) standard, the court must accept as true all factual allegations in the PAC and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, the court is not required to credit legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *see Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). A complaint must contain enough factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The party opposing the motion for leave to amend bears the burden of demonstrating the claim's futility. *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998).

### III.   DISCUSSION

Emanuel primarily argues that leave to amend should be denied as futile because both proposed causes of action are expressly preempted by ERISA and therefore would not survive a motion to dismiss. Emanuel argues in the alternative that the pleading is jurisdictionally defective, that New York state does not recognize an affirmative cause of action for economic

5

duress and that Trundle fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).  Doc. 24 at 5, 9-11.

The Court begins by noting that jurisdiction is not necessarily defeated by Trundle's proposed amendment.  *See Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 528-29 (5th Cir. 2009) ("Once the case is removed, a plaintiff's voluntary amendment to a complaint will not necessarily defeat federal jurisdiction; it is within the district court's discretion whether to remand the action to state court. However, the district court may not remand if the defendant demonstrates the presence of a 'substantial federal claim, *e.g.*, one completely preempted by ERISA[.]'" (citations omitted)).  The Court agrees that both causes of action are expressly preempted by ERISA and that the PAC insufficiently pleads fraud and addresses each point in turn.

### A. ERISA Preemption

ERISA provides for two types of preemption:  complete preemption under Section 502; and express preemption under Section 514.  *See* 29 U.S.C. §§ 1132, 1144(a).  Complete preemption is a jurisdictional concept which "permits a state cause of action brought in state court to be recast 'as a federal claim for relief, making its removal by the defendant proper on the basis of federal question jurisdiction.'"  *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 570 (S.D.N.Y. 2016) (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009)) (internal alterations omitted); *see Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 6 (D. Conn. 2019) (Complete preemption "convert[s] the plaintiff's state law claim to one to enforce the ERISA plan under federal law.").

Express preemption, on the other hand, is among the ordinary forms of "defensive" preemption.  ERISA explicitly "supersede[s] any and all State laws insofar as they may now or

hereafter *relate to* any employee benefit plan[.]" 29 U.S.C. § 1144(a) (emphasis added).  Section 514 broadly defines the term "State law" to "include[] all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."  *Id.* § 1144(c)(1).  Therefore, "all common law causes of action that 'relate to' an employee benefit plan fall under ERISA's express preemption clause."  *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 408 (S.D.N.Y. 2009) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987)); *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987); *Chau*, 167 F. Supp. 3d at 571 ("ERISA preemption is not limited to state laws that specifically affect employee benefit plans; it extends to state common-law contract and tort actions that relate to benefits as well." (citation omitted)).  ERISA expressly preempts state statutory claims that "'provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee.'"  *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (quoting *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989)).  Indeed, the Supreme Court has long emphasized that "the express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'"  *Pilot Life Ins.*, 481 U.S. at 45-46 (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

The Second Circuit distinguishes between express preemption of state statutory and state common law claims, articulating distinct standards for each circumstance.  With respect to state common law causes of action like those at issue here, the Second Circuit follows the Supreme Court's approach in *Aetna Health Inc. v. Davila* (the "*Davila*" test), a case concerning *complete* preemption under Section 502(a).  542 U.S. 200, 209-14 (2004); *Paneccasio*, 532 F.3d at 114.  The *Davila* test has two prongs and a state law claim is expressly preempted only if both prongs

are satisfied.  *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145-46 (2d Cir. 2017) (citing *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011)).  In accordance with the first prong, the claim in question must be brought by "an individual [who], at some point in time, could have brought his claim under ERISA [§ 502(a)]." *Id.* at 146 (quoting *Davila*, 542 U.S. at 210).  The second prong requires that the state law claim involve "no other independent legal duty that is implicated by a defendant's actions." *Id.*  In practice, the first prong of the *Davila* test requires two inquiries:  first, "whether the plaintiff is the *type* of party that can bring a claim pursuant to [§ 502(a),]" and second, "whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim" pursuant to § 502(a).  *Id.* at 146 (citing *Montefiore*, 642 F.3d at 328) (emphasis in original).

According to Emanuel, "there can be no dispute" that Trundle, as administrator, beneficiary, and trustee of the Plan, can bring an ERISA enforcement claim.  Doc. 24 at 6. Trundle makes no allegations otherwise.  According to the PAC, in 2016 and in her capacity as an "administrator and trustee" of the Plan, Trundle sought to close and make all final distributions from the Plan.  Doc. 21-3, ¶¶ 8, 28.  On those facts alone, Trundle qualifies as a fiduciary for the purposes of ERISA's civil enforcement scheme.  *See* 29 U.S.C. § 1002(21)(A) ("[A] person is a fiduciary with respect to a plan to the extent (i) [s]he exercises *any* discretionary authority or discretionary control respecting management of such plan or exercises *any* authority or control respecting management or disposition of its assets, . . . [or] (iii) [s]he has *any* discretionary authority or discretionary responsibility in the administration of such plan." (emphasis added)).  Trundle is also a beneficiary of the Plan to the extent that, as an officer of the Company, she is or may become entitled to benefits under the Plan.  *See id.* § 1002(8) (defining 'beneficiary' as "a person designated by a participant, or by the terms of an employee

benefit plan, who is or may become entitled to a benefit thereunder"). Trundle may therefore bring an ERISA civil enforcement claim pursuant to section 502(a). *See id.* § 1132(a)(2) ("A civil action may be brought . . . by [a] beneficiary or fiduciary. . . .").

Having satisfied the first step of the first prong of *Davila*, the Court turns to the second step: whether Trundle's common law claims "can be construed as a colorable claim for benefits" under ERISA's civil enforcement provision. *See McCulloch*, 857 F.3d at 146 (citation omitted). Emanuel asserts that both proposed causes of action can be so understood. Doc. 24 at 6-7. The Court agrees.

Section 502(a)(1)(B) permits "a participant or beneficiary . . . to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Under section 502(a)(2), "a participant, beneficiary or fiduciary" may bring an action and seek "appropriate relief" for breach of fiduciary duty. *Id.* §§ 1132(a)(2), 1109(a). Both of the actual claims that Trundle now attempts to make can be construed as section 502(a)(1)(B) or section 502(a)(2) claims and are therefore expressly preempted.

Trundle's first cause of action is for economic duress. Doc. 21-3, ¶¶ 40-45. Emanuel contends that, as an initial matter, New York does not recognize economic duress as an independent cause of action. Doc. 24 at 7. For the purpose of Trundle's motion, the Court will "assume without deciding that New York law recognizes [economic] duress as a cause of action sounding in tort." *Dantas v. Citigroup, Inc.*, 779 F. App'x 16, 20 (2d Cir. 2019) (summary order).[5] In any case, as Emanuel principally argues, *see* Doc. 24 at 7, ERISA expressly preempts

---

[5] As the Second Circuit recently noted "New York law appears to be unsettled with respect to whether duress may be asserted not only as an equitable defense but also as a tort claim." *Dantas v. Citigroup, Inc.*, 779 F. App'x 16, 20 n.2 (2d Cir. 2019) (summary order collecting cases). *See also* Jeffrey L. Harrison, *Duress and Undue Influence in*

9

such a common law claim for economic duress based on the facts alleged in the PAC. According to Trundle, Emanuel refused to sign the paperwork to effectuate the transfer of Trundle's life insurance policy and closure of the Plan unless paid $100,000. Doc. 21-3, ¶¶ 14, 16. Without Emanuel's signature, Trundle faced steep financial penalties. *Id.* ¶ 13. Trundle transferred this "extorted *additional* amount . . . to Emanuel *from the Pension*." *Id.* ¶ 18 (emphasis added). In other words, Trundle required Emanuel's consent in his capacity as a Plan trustee in order to take actions related solely to the Plan; Emanuel demanded he receive payment additional to that due to him under the Plan; Trundle unwillingly complied, transferred funds from the Plan, and now seeks the return of that sum, which she claims as damages. On these facts, Trundle might have brought a claim under section 502(a)(2), which provides a cause of action for breach of fiduciary duty. Both of Trundle's allegations presuppose that Emanuel was acting as a fiduciary because both center on Emanuel's exercise of "authority or control respecting management or disposition of its assets[.]" *See* 29 U.S.C. § 1002(21)(A) (defining 'fiduciary'); *see, e.g.,* Doc. 21-3, ¶ 12 ("Without [Emanuel's] signature, the assets of the Pension could not be distributed[.]"). The factual allegations regarding the 2016 transaction can be read to allege a breach of several duties, namely the duties to act in the interest of the Plan and to avoid self-dealing. *See* 29 U.S.C. § 1104(a)(1) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and [ ] for the exclusive purpose of (A) providing benefits to participants and their beneficiaries [and] (D) in accordance with the documents and instruments governing the plan…"); *see also Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 143 n.10 (1985) (listing and discussing fiduciary duties under ERISA). Additionally, her claim might

---

*Contract Law As Cognitive Trespass*, 98 Neb. L. Rev. 970, 992 (2020) (identifying a "pattern of inconsistency" with respect to state courts' recognition of duress and economic duress as common law causes of action).

have been framed under section 502(a)(1)(B) to the extent she seeks to recover or clarify her future right to benefits under the Plan.

The second proposed claim, for fraud, grows out of the 2003 transaction between the Plan, the Firm, and the Club. Doc. 21-3, ¶ 46-57. This is essentially a breach of fiduciary duty claim, too: Emanuel is alleged to have engaged in prohibited self-dealing by causing a loan or investment to be made to an entity in which he or his family has an ownership interest. Section 406(a)(1) prohibits a fiduciary from causing the Plan to engage in a transaction if the fiduciary "knows or should know that such transaction constitutes a direct or indirect . . . lending of money or other extension of credit between the plan and a party in interest[.]" 29 U.S.C. § 1106(a)(1).[6] Alternatively or additionally, it is cognizable as a claim that Emanuel breached trustee record keeping or disclosure duties. *See Russell*, 473 U.S. at 142-43 ("[T]he principal statutory duties imposed on [] trustees relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest."). Therefore, the proposed fraud claim satisfies the first prong of the *Davila* test, too.

Finally, the second prong of *Davila* is satisfied because no other independent legal duty is implicated by Emanuel's actions with respect to either the 2003 or 2016 transactions. *See McCulloch*, 857 F.3d at 145-46. This is apparent from the text of the PAC. In order to close the Plan, "Trundle required Emanuel's signature *as trustee*" and "Emanuel refused to sign *as Trustee*" unless he received the sum he demanded. Doc. 21-3, ¶¶ 11, 17 (emphasis added). The proposed pleadings do not point to the existence of an independent legal duty and Trundle's

---

[6] A 'party in interest' includes, *inter alia*, a "partnership [] of which (or in which) 50 percent or more of [] the capital interest or profits interest [] is owned directly or indirectly, or held by" various persons, including "any fiduciary (including, but not limited to, any [] trustee . . .)." 29 U.S.C. § 1002(14).

11

briefing does not argue any such additional duty is implicated. *See* Docs. 21, 21-4. "[It] seems clear that 'the alleged liability is derived from or dependent upon the existence and administration of [the] ERISA-regulated benefit plan,' and thus that plaintiff's [claims are] 'not entirely independent of the federally regulated contract itself, and is therefore preempted.'" *Curcio v. Hartford Fin. Servs. Grp.*, 469 F. Supp. 2d 18, 23 (D. Conn. 2007) (quoting *Davila*, 542 U.S. at 210). Accordingly, Trundle's motion for leave to amend is denied as futile as her proposed claims are expressly preempted by ERISA.[7]

### B. Fraud and Rule 9(b) Particularity

In addition, even if Trundle's claim of fraud were not expressly preempted, it would be dismissed because it is not plead with sufficient particularity. Common law fraud requires "a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 31 N.Y.3d 569, 578-79 (N.Y. 2018) (citation omitted). Under Federal Rule of Civil Procedure 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud." To meet this heightened pleading standard, a complaint charging fraud must "(1) detail the statements that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements are fraudulent." *Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998)

---

[7] As noted, Emanuel briefly argues that leave may be denied on the grounds that the PAC fails to set forth a basis for federal subject-matter jurisdiction. Doc. 24 at 4. Because this Court, applying *Davila*, finds that the proposed common law causes of action would be dismissed as expressly preempted by ERISA and are therefore futile, it follows that the causes of action would also be *completely* preempted, thereby providing a basis for subject-matter jurisdiction. This is true because *Davila* is the proper test for *both* complete and express preemption where, as here, the case involves state common law claims. As this Court observed in *Chau v. Hartford Life Ins. Co.*, the Second Circuit's "standard for preemption of state law common law claims, as opposed to statutory claims, arises from the Supreme Court's decision in *Davila*, and related to the 'complete preemption' doctrine under Section 502(a)." 167 F. Supp. 3d 564, 571 n.3 (S.D.N.Y. 2016).

12

(quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir.1996)) (internal alterations omitted); *see Gonzalez v. J.P. Morgan Chase Bank, N.A.*, 228 F. Supp. 3d 277, 289 (S.D.N.Y. 2017) (same).

Emanuel contends that the proposed pleading "fall[s] far short" of this bar. Doc. 24 at 10-11. The Court agrees. The PAC makes repeated reference to allegedly false "representations made by Emanuel concerning the use of Pension funds." Doc. 21-3, ¶¶ 30-31. However, the pleading is almost entirely devoid of detail. Trundle fails to identify any allegedly fraudulent statements or representations, explain why such representations would be fraudulent, or identify where and when such representations were made. Indeed, Emanuel is not alleged to have made any specific statements at all. The proposed fraud claim therefore fails to meet the demands of Rule 9(b), would be dismissed, and is therefore futile.

### C. Denial with Prejudice

This is Trundle's second attempt to raise claims against Emanuel that are expressly preempted. Moreover, Trundle was made aware of the requirements of Rule 9(b) when this Court granted Emanuel's dismissal motion. *See* Doc. 20 at 15. "This is therefore not the case in which a plaintiff, without the benefit of a ruling, mistakenly does not see the necessity of amendment or is not in a position to weigh the practicality and possible means of curing specific deficiencies." *In re Express Scripts Holding Co. Sec. Litig.*, No. 16 CIV. 3338 (ER), 2018 WL 2324065, at *10 (S.D.N.Y. May 22, 2018) (quotation marks and citation omitted), *aff'd sub nom. In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9 (2d Cir. 2019) (citation omitted). Therefore, Trundle's motion is denied with prejudice.

13

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Trundle's motion for leave to amend the complaint with prejudice. The Clerk of the Court is respectfully requested to terminate the motion, Doc. 21, and close the case.

Dated: July 23, 2020
       New York, New York

_____
Edgardo Ramos, U.S.D.J.